ADOLPH O. STENE, Respondent, v. THE COUNTY OF DIVIDE, a Municipal Corporation of the State of North Dakota, Appellant.

(197 N. W. 595.)

**Payment — by owner of property, under protest, to remove purported lien created by equitable owner held not recoverable for failure of consideration.**

Where one pays money to another, under protest, to remove a purported lien from property belonging to the one making such payment, such lien having been placed against the property by a third person who was at the time the equitable owner, it is *held* that the plaintiff, the present owner, may not recover the money paid to discharge such lien on the theory of failure of consideration.

Opinion filed February 18, 1924.

Conversion, 13 C. J. § 8 p. 855 n. 25.  Equity, 21 C. J. § 190 p. 200 n. 11.  Payment, 30 Cyc. p. 1322 n. 49 New.  Vendor and Purchaser, 39 Cyc. pp. 1303 n. 22; 1612 n. 98, 99, 1; 1677 n. 34.

Appeal from the District Court of Divide County, *Lowe*, J. Reversed.

*E. J. McIlraith*, for appellant.

"But the court expressly recognized the universal rule that in equity such contracts are regarded as transferring to the vendee in possession an equitable estate or interest which he may sell, assign, or mortgage, as stated by the Michigan court, and in *Cummings v. Duncan*, such equitable rule was also recognized. We there expressly held that the vendee's equitable interest in the real property under such a contract could be levied upon and sold under execution. Surely, if this be true, and there can be no doubt upon this proposition, then such vendee had an estate or interest in the land which he could sell, assign, or mortgage, and such is, as we understand it, the universal holdings of the courts.

"In support of the correctness of our views we will content ourselves by citing 27 Cyc. 1037, and cases, cited, from which we quote: 'The purchase under an executory contract for the sale of land, or a bond for title, being in possession and having partly performed his part of the contract, although the legal title remains in the vendor, has an interest in the premises which he may mortgage to a third person.' The fact that in the technical legal sense no estate or interest in the real property is conveyed to the vendee under such a contract is not controlling. Wenzel clearly had a mortgageable interest in the real property under all the authorities. 27 Cyc. 1037, 1139 and cases cited: Houghton v. Allen, 2 Cal. Unrep. 780, 14 Pac. 641; Jones v. Lapham, 15 Kan. 540; Laughlin v. Braley, 25 Kan. 147; Crane v. Turner, 67 N. Y. 437; Smith v. Patton, 12 W. Va. 541; Muehlberger v. Schilling, 19 N. Y. S. R. 1, 3 N. Y. Supp. 705; Scott v. Farnam, 55 Wash. 336, 104 Pac. 639; Heard v. Heard, 61 So. 343; 1 Jones, Mortg. 136." Simonson v. Wendell, 27 N. D. 638.

"We deem it a well-settled rule of law that where a party, with full knowledge of the facts, pays a demand that is unjustly made against him, and to which he has a valid defense, and where no special damage or irreparable loss would be incurred by making such defense, and

where there is no claim of fraud upon the part of the party making such claim, and the payment is not necessary to obtain the possession of the property wrongfully withheld, or the release of his person, such payment is voluntary, and cannot be recovered. Nor will the fact that such payment was accompained by a protest make that involuntary which otherwise would be voluntary. A protest is of no avail unless there be duress or coercion of some character, and then its only office is to show that the payment is the consequence of such duress or coercion. Benson v. Monroe, 7 Cush. 125; Commissioners v. Walker, 8 Kan. 431; Emmons v. Scudder, 115 Mass. 367; Lester v. Mayor, 29 Md. 415; Potomac Coal Co. v. Cumberland & P. R. Co. 38 Md. 226; Gerecke v. Campbell, 24 Neb. 306, 38 N. W. 847; Mariposa Co. v. Bowman, Deady, 228; Lamborn v. Commissioners, 97 U. S. 181; Powell v. Board, 46 Wis. 210, 50 N. W. 1013. The district court is directed to reverse the judgment in this case, and enter judgment for the defendant on the pleadings. All concur." Wessell v. D. S. B. Johnson Land & Mortg. Co. 3 N. D. 164.

The above rule has been reaffirmed and re-emphasized in the case of Wiles v. McIntosh Co. 10 N. D. 594.

"There must be a pressing, controlling and immediate necessity on the person making the payment to render it compulsory or involuntary. The illegal demand must be accompanied by the apparent power, at least, to carry the threat of enforcement into immediate execution, and there must be no avenue of immediate escape from the threatened injury other than by making the illegal payment. But where dispute arises and the debtor, who pays under protest, has at hand reasonable means of immediate and adequate relief other than by making the payment, his act is not one done under coercion." 21 R. C. L. p. 149.

*Geo. P. Homnes,* for respondent.

"Where a sale of land is evidenced by a contract only, and the purchase price has not been paid, and the vendor retains the legal title, the parties occupy substantially the position of mortgagor and mortgagee. The vendor has a lien for his purchase money by virtue of his contract and a lien which the vendee cannot, by conveyance or otherwise, effect or impair, and which can be extinguished only by payment of the purchase money." Roby v. Bismarck Nat. Bank, 4 N. D. 156, 59 N. W. 719.

"We think the judgment appealed from is correct, except in one particular. Such judgment in effect decrees that plaintiff's mortgage covers not only the equities held by the mortgagor Wenz et al. but also the interests purchased by Krupp from the development company. *Clearly this cannot be true. Wenzel, of course, could hypothecate nothing that he did not own.* The interest of the Development Company consisted of the legal title held in trust as security for the payment of the remainder due it on the purchase price. To the extent of such interest the development company manifestly had rights superior to those of the mortgagee, and Krupp, by his purchase from such company, succeeded to such rights." Simonson v. Wenzel, 27 N. D. 638.

"The purchaser under an executory contract for the sale of land, or a bond for title, being in possession *and having partly performed his part of the contract,* altho the legal title remains in the vendor, has an interest in the premises which he may mortgage to a third person." 27 Cyc. 1037.

In a subsequent case the Minnesota court held that a threat to shut off a water supply in a building constitutes such compulsion as will entitle a party to recover money paid to prevent such act. Panton v. Duluth Gas & Waterworks, 52 N. W. 527.

"The carrier and his customer do not stand upon a footing of equality. The latter is only one individual of a million. He cannot afford to higgle or stand out and seek redress in the courts. His business will not admit of such a course. He prefers rather to accept any bill of lading or sign any paper the carrier presents, often indeed without knowing what one or the other contains. In most cases he has no other alternative but to do this or abandon his business." Railroad Co. v. Lackwood, 17 Wall. 379.

"Ordinarily, protest is evidence of compulsion or unwillingness to pay." 21 R. C. L. 148.

BIRDZELL, J. This is an action to recover moneys paid to the defendant under protest to discharge a purported seed lien against a certain quarter section of land owned by the plaintiff. In the lower court the plaintiff had judgment and the defendant appeals. The facts were stipulated and are as follows: The plaintiff Stene is the fee title owner of the northeast quarter of section 13, township 162, north

of range 182, west of the 5th P. M. in Divide county. On August 25, 1919 he entered into a written contract to sell this land to one Tenny Stromstad for a consideration of $3,300 to be paid on the crop payment plan. No payment was made by the purchaser, but he went into possession and farmed the land in 1920. In April, 1920 Stromstad entered into a seed grain contract with the defendant Divide county, in which he purported to give to the latter a lien in the sum of $300 for seed grain furnished. September 23, 1920, the sale contract between the plaintiff and Stromstad was rescinded and the latter executed a quitclaim deed. Stromstad had paid no money under the contract and he received no present consideration for the quitclaim deed. Thereafter, the plaintiff, being desirous of making a loan, found it necessary to remove the purported seed lien from the land. This he did by paying to the county the sum of $337.54 under protest, and the county caused the seed grain contract to be cancelled of record. In this action the plaintiff is attempting to recover the money thus paid to discharge the purported seed lien. The defendant and appellant argues that the judgment is erroneous for the reason that it stands in as good a position with respect to its lien as though it were a second mortgagee; that, conceding that Stone held the legal title at the time the seed grain contract was entered into, he held it only as security for the amount due under the sale contract, and Stromstad was, in contemplation of law, the owner of the land; and that as such an owner he had a right to negotiate the seed grain contract and give to the county whatever security his equity afforded and thus place it in the position of a second mortgagee. As against this contention it is asserted by the respondent that, inasmuch as Stromstad had not paid any part of the consideration, he had no equity in the land and consequently had no interest to which a seed grain lien could attach in favor of the county. We think the contention of the appellant is clearly correct. It is elementary law that a contract for the sale of real property works an equitable conversion through the application of the maxim that equity considers as done that which ought to be done. After the contract the vendor has a right to the purchase price and the vendee to the title, but the title is held as security for the payment of the price. The equity of the purchaser under a crop payment contract does not depend exclusively upon the payment of a cash consideration. Under such a

contract it is expected that he will enter into possession and perform services in utilizing the land which will inure to the benefit of the title owner as well as to himself. In so doing, he is acting to his own prejudice in law and acquiring an interest in the land, the value of which is measured by the difference between the unpaid consideration and the value of the land. There are no facts in the present record from which it can be ascertained whether there is any such margin in the instant case, if such an inquiry were material. But it nevertheless does appear that Stromstad entered into possession and performed services in carrying out the contract, hence it was not wholly executory. It further appears that he, as the equitable owner consented to give to the defendant a lien for the seed grain furnished. No argument is presented which challenges the validity of this contract, except on the theory that Stromstad acquired no equity or interest which he could mortgage. Since the respondent is in error in this contention, we must deal with the seed lien as a second mortgage. Obviously, it was not extinguished by the quitclaim deed. For aught that appears in this record the defendant county would have had a right to take steps to preserve its security, even after the quitclaim deed. Hence, when it cancelled the lien contract on the only basis upon which it would consent to cancel it, namely payment, it furnished a good consideration for the money paid and it can not be recovered back.

Judgment reversed.

NUESSLE, JOHNSON, and CHRISTIANSON, JJ., concur.

BRONSON, Ch., concurs in result.